UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
**UNITED STATES OF AMERICA**            )
                                        )       **CRIMINAL ACTION**
        **v.**                          )
                                        )       **NO. 14-40042-TSH**
**JOSE RODRIGUEZ,**                     )
                                        )
            **Petitioner.**             )
_____ )

## MEMORANDUM AND ORDER ON PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE (Docket No. 76)

**January 16, 2019**

**HILLMAN, D.J.**

Jose Rodriguez ("Petitioner") moves this Court, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct the 63-month sentence imposed by this Court on December 7, 2015. Petitioner contends that he received ineffective assistance of counsel because his attorney (1) advised him to plead guilty to the charge of being a felon in possession of a firearm, and (2) because his attorney failed to object to the drug quantities attributed to him in the Pre-Sentence Investigation Report ("PSR"). For the reasons below, Petitioner's motion (Docket No. 76) is ***denied***.

### Background

*1. Factual Background[1]*

On July 1, 2013, a witness cooperating with the Drug Enforcement Administration ("CW") exchanged several phone calls with Petitioner, which culminated in an agreement that Petitioner would sell the CW 20 grams of crack cocaine for $1,000. An undercover officer ("UC") drove the

---

[1] The factual background is drawn from the Rule 11 hearing. (Docket No. 78). At that hearing, Petitioner acknowledged that the facts presented by the Government were true. *Id.* at 31-32.

CW to 101 Mechanic Street in Leominster where Petitioner and an unidentified male called Menor sold 18.6 grams of cocaine base to the CW.

On July 16, 2013, agents provided the CW with recording equipment and $1,400 in buy money. Agents then instructed the CW to go to 101 Mechanic Street to buy drugs from Petitioner. Petitioner sold the CW 15.3 grams of cocaine base for $900.

On July 23, 2013, Petitioner called the CW to ask whether the CW was "looking for anything." Petitioner agreed to sell the CW half an ounce of crack cocaine for $700. The CW then walked to 101 Mechanic Street and met with Menor, who proceeded to sell 12.6 grams of cocaine base to the CW.

On July 30, 2013, the CW spoke on the phone with Petitioner, who agreed to sell an ounce of crack cocaine to the CW. The UC then drove the CW to 101 Mechanic Street. Agents installed audio and video recording devices on both the CW and UC. The CW and UC encountered Petitioner and Menor in the rear parking lot. Petitioner then directed the CW and UC to a cellar across the street at 96 Mechanic Street where Petitioner sold 27.5 grams of cocaine base to the UC for $1,400.

On September 13, 2013, the CW and the UC drove to 101 Mechanic Street to buy more crack cocaine from Petitioner.[2] A male believed to be co-defendant Mr. Alicea-Romero's brother greeted the two men in the parking lot. Subsequently, Alicea-Romero emerged from the house and joined the men in the parking lot. The CW informed Alicea-Romero that he wanted to buy an ounce of crack cocaine from Petitioner. Alicea-Romero told the CW that he believed Petitioner

---

[2] The Rule 11 hearing transcript mistakenly indicates that this sale occurred on December 13, 2013. The sale in fact occurred, however, on September 13, 2013, consistent with Count Six of the indictment, the PSR, and the DEA reports attached to Petitioner's motion.

2

might have half an ounce of crack cocaine for $790. The men then went to a second-floor porch where Alicea-Romero sold the UC 12.7 grams of cocaine base for $790.

Toll records obtained by investigators revealed a series of nine phone calls between Alicea-Romero and Petitioner in the ten minutes before the sale, and one phone call from Alicea-Romero to Petitioner about one and a half minutes after the sale.

On October 2, 2013, the CW placed a recorded call to Petitioner and said "his cousin" (the UC) would be calling to buy a half ounce of crack cocaine. Minutes later, the CW received several calls from Alicea-Romero that he was instructed not to answer. The UC then made three recorded calls to Petitioner that were not answered. Minutes later, however, Alicea-Romero called the UC. That call was recorded, and Alicea-Romero and the UC agreed to meet at 101 Mechanic Street. The two men met in the rear parking lot of 101 Mechanic Street and the UC then followed Alicea-Romero to a second-floor landing inside the building. Alicea-Romero then sold the UC 26.5 grams of cocaine base in exchange for $1,500.

Again, toll records revealed Petitioner called Alicea-Romero immediately after the call from the CW. In addition, Petitioner called Alicea-Romero immediately before Alicea-Romero called the UC. Finally, Alicea-Romero called Petitioner immediately after the sale.

On October 16, 2013, the CW contacted Petitioner to ask if he had a 9 mm gun to sell. Petitioner informed the CW that he had sold the 9 mm, but that he had a .45 caliber handgun that he was willing to sell for $650. The CW told Petitioner that he was looking for a smaller gun, but that his cousin, the UC, might be interest in the .45 caliber.

The next day, the CW confirmed the deal with Petitioner during a recorded phone call. Petitioner instructed the CW and UC to meet him at 31 Howard Street and met the two men outside.

3

Petitioner then brought the CW and UC into the kitchen of the second-floor apartment were Alicea-Romero and another male introduced as Chuletta were present.

Shortly after, Chuletta left the kitchen and returned moments later carrying a bag. He removed a .45 caliber handgun that was wrapped in a white shirt and handed the gun to Petitioner. Petitioner handled the gun, inspected it, and commented that it was cold from being outside. He then placed the gun on the table for the UC to examine. The UC provided $650 to Petitioner and then placed the gun into his backpack.

Chulette then handed Petitioner a 9 mm that Peittioner examined and then showed to the UC. When the UC asked if Petitioner would be willing to sell the 9 mm as well, Petitioner refused, explaining, "any plastic guns they can get they want to keep."

## 2. *Procedural History*

On December 17, 2014, a grand jury issued a nine-count indictment charging Petitioner and Alicea-Romero with conspiracy to possess with intent to distribute and to distribute cocaine base in violation of 21 U.S.C. § 846. The indictment alleged that the conspiracy involved 28 or more grams of cocaine base and specifically attributed that amount to Petitioner. 21 U.S.C. § 841(b)(1)(B). The indictment further charged Petitioner and Alicea-Romero with distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and charged Rodriguez individually with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

On January 20, 2015, Petitioner was arrested and held pending trial. On August 31, 2015, Petitioner pled guilty to the charges in the indictment without a plea agreement.

On November 2, 2015, the Probation Office circulated the initial PSR, which attributed 116.4 grams of crack cocaine to Petitioner. Petitioner's counsel objected to the criminal history calculation in the report but not the quantity of cocaine attributed to Petitioner. On November 30,

4

2015, the Probation Office issued the final PSR, which determined Petitioner had a total offense level of 24 and a criminal history category of III, which resulted in a guideline range of 63-78 months.

On December 7, 2015, this Court also found Petitioner's guideline range was 63-78 months and sentenced him to 63 months in prison followed by 4 years of supervised release.

## Legal Standard

Under 28 U.S.C. § 2255, a prisoner in custody may seek post-conviction relief if his sentence "(1) was imposed in violation of the Constitution; (2) was imposed by a court that lacked jurisdiction; (3) exceeded the statutory maximum; or (4) was otherwise subject to collateral attack." *Davis v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). Petitioner seeking post-conviction relief for ineffective assistance of counsel has the burden to make out a claim for such relief by a preponderance of the evidence. *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993).

## Discussion

To show ineffective assistance of counsel, Petitioner must demonstrate that: "(1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *United States v. Constant*, 814 F.3d 570, 578 (1st Cir. 2016) (quotation marks and citation omitted).

Reasonableness is assessed "as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052 (1984). "Judicial scrutiny of a counsel's performance must be highly deferential" and the Court must make "every effort . . . to eliminate the distorting effects of hindsight." *Id.* at 689, 104 S.Ct. 2052. Further, even deficient performance

does not constitute ineffective assistance if it has not resulted in actual prejudice. *See United States v. McGill*, 11 F.3d 223, 226 (1st Cir. 1993).

In order to show prejudice, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *Johnston v. Mitchell*, 871 F.3d 52, 64 (1st Cir. 2017) (quoting *González–Soberal v. United States*, 244 F.3d 273, 278 (1st Cir. 2001)). "A defendant's failure to satisfy one prong of the *Strickland* analysis obviates the need for a court to consider the remaining prong." *Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir. 2010) (citation omitted).

"[A] guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052 (quotation marks and citation omitted). Further, the "justifications for imposing the 'prejudice' requirement in *Strickland v. Washington* are also relevant in the context of guilty pleas." *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366 (1985).

*1. Felon in Possession*

Petitioner contends that his counsel was ineffective in advising him to plead guilty to being a felon in possession of a firearm because "the facts only show that [Petitioner's] possession was transitory, and without the required exercise of authority, dominion or control over the firearm" required by *United States v. Teemer*, 394 F.3d 59 (1st Cir. 2005). (Docket No. 76, at 6).

In *Teemer*, the defendant claimed that his fingerprints were on a firearm because he had simply moved the weapon from a chair so that he could sit and watch television at his friend's

6

residence. The defendant argued that his contact with the firearm constituted "innocent contact" which warranted safe harbor from prosecution. The First Circuit, however, declined to craft a mandatory safe harbor because "the occasions that might warrant leniency are myriad and hard to cabin in advance." 394 F.3d at 65. Instead, the court reasoned that "[m]ost prosecutors and— failing that—most juries would show good sense in such situations." *Id.* at 64. Importantly, the court emphasized that "[n]either the language of the felon-in-possession statute, nor its evidence purpose, encourage the court to develop defenses that leave much room for benign transitory possession" and that even if the court "were to craft a mandatory safe harbor, it would not include this case." *Id.* 64-65.

In his plea colloquy, Petitioner admitted far more than the level of possession the First Circuit deemed sufficient for conviction in *Teemer*. For instance, Petitioner admitted:

- He informed the CW that he did not have a 9 mm to sell because he had already sold the gun.
- He told the CW that he did have a .45 caliber that he was willing to sell to the CW's cousin.
- He arranged for the CW and UC to meet him at 31 Howard Street for the purpose of the sale.
- He accompanied the CW and UC to the kitchen where the sale was to occur;
- He took the gun from Chuletta, handled to gun, inspected it, and then placed the gun on the table for the UC to examine.
- He accepted the $650 from the UC in exchange for the gun.

(Docket No. 78 at 29-30).

There is far more evidence in the record here than in *Teemer* that the First Circuit held sufficient for a conviction. Therefore, Petitioner's reliance on *Teemer* is misplaced. *See, e.g.*, *United States v. Scott*, 564 F.3d 34, 39 (1st Cir. 2009) (noting that "constructive possession can be brief: a minute of possession is as much an offense as a year of possession" (quotation marks and citation omitted)).

7

Further, Petitioner's "statements at [his] Rule 11 proceeding are conclusively established as accurate and true unless [he] can offer a valid reason otherwise." *Inthoulangsy v. United States*, 2012 WL 2339093, at *3 (D. Mass. June 18, 2012) (citation omitted); *see also United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984) ("Even if the appellant had asserted that, upon the advice of counsel, he had made false statements at the change-of-plea proceedings, the presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified."). Petitioner has offered no valid reasons why this Court should not accept his statements at his Rule 11 proceeding where he admitted to facts that unquestionably support his conviction.

Therefore, the record supports a finding that there was adequate factual support for Petitioner's guilty plea. It follows that it was not unreasonable for Petitioner's counsel to recommend that he plead guilty to the charge. Therefore, Petitioner has failed to make a showing of ineffective assistance of counsel.

*2. Drug Quantities*

Petitioner next contends that his counsel was ineffective because he failed to object to the inclusion of the crack cocaine sold by Alicea-Romero to the UC on September 13, 2013 and October 2, 2013 as attributable to him.

Here, the facts that Petitioner admitted to in his colloquy amount to conspiracy. With respect to the September 13, 2013 sale:

- The CW and UC drove to 101 Mechanic Street in an attempt to buy crack cocaine from Petitioner.
- A male who investigators believed to be Mr. Alicea-Romero's brother, greeted the two men in the parking area.
- Alicea-Romero then came from the house and the CW informed him that he wanted to purchase an ounce of crack cocaine from Petitioner.

- Alicea-Romero informed the CW that he thought Petitioner might have a half an ounce left and went back inside the residence to check.
- Alicea-Romero returned shortly after and informed the UC that he could sell a half ounce of crack cocaine for $790.
- The men then went to the second-floor porch and consummated the sale.
- Toll records revealed a series of nine phone calls between Mr. Alicea-Romero and Petitioner in the ten minutes before the sale, and a phone call from Alicea-Romero to Petitioner about one and a half minutes after the sale.

(Docket No. 78 at 27-28). And with regards to the sale on October 2, 2013:

- The CW called Petitioner and told him that his cousin (the UC) would call to buy a half an ounce of crack cocaine.
- Shortly after, the CW received several calls from Alicea-Romer but was instructed by agents not to answer.
- The UC then made three recorded calls to Petitioner that were not answered.
- Minutes later, however, Alicea-Romero called the UC. The call was recorded and the two agreed to meet at 101 Mechanic Street.
- The two men met at 101 Mechanic Street and Alicea-Romero again brought the UC to the second story porch where they consummated the sale of 26.5 grams of crack cocaine in exchange for $1,500.
- Toll records were again obtained by investigators. The records revealed that Petitioner called Alicea-Romero immediately after the call from the CW. In addition, Petitioner called Alicea-Romero immediately before Alicea-Romero called the UC. Finally, Alicea-Romero called Petitioner immediately after the sale.

(Docket No. 78 at 28-29).

As above, Petitioners Rule 11 statements are presumptively accepted as true unless he can offer a valid reason otherwise. *Inthoulangsy*, 2012 WL 2339093, at *3.

To convict someone of a drug conspiracy, the government must prove that "he knew about and voluntarily participated in the conspiracy, 'intending to commit the underlying substantive offense'—and proof may come from direct evidence or circumstantial evidence, like inferences drawn 'from members' words and actions' and from 'the interdependence of activities and persons involved.'" *United States v. Acosta-Colon*, 741 F.3d 179, 190 (1st Cir. 2013) (quoting *United States v. Ortiz de Jesús*, 230 F.3d 1, 5 (1st Cir. 2000)). In a drug conspiracy, "each coconspirator is responsible not only for the drugs he actually handled but also for the full amount of drugs that

9

he could reasonably have anticipated would be within the ambit of the conspiracy." *United States v. Santos*, 357 F.3d 136, 140 (1st Cir. 2004).

Because the evidence in the record could reasonably support the existence of a conspiracy, and because coconspirators are responsible for the full amount of drugs within the ambit of the conspiracy, Petitioner's counsel was well within the range of competence demanded of attorneys in criminal cases in failing to object to the inclusion of the September 13, 2013 and October 2, 2013 as attributable to Petitioner. Consequently, Petitioner cannot establish that he received ineffective assistance.[3]

## Conclusion

For the reasons stated above Petitioner's motion (Docket No. 76) is ***denied***.

## Certificate of Appealability

A petitioner seeking a certificate of appealability in a § 2255 proceeding must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a "substantial showing," a petitioner must demonstrate that

> reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

---

[3] Petitioner contends that "the facts make clear that Rodriguez was no longer selling crack cocaine after July of 2013" and that while a presumption of continuity can be inferred, it may not be "for such a considerable amount of time." (Docket No. 76, at 9). Petitioner, however, made no showing that he withdrew from the conspiracy. *See Smith v. United States*, 568 U.S. 106, 110, 133 S.Ct. 714 (2013) ("Establishing individual withdrawal was a burden that rested firmly on the defendant regardless of when the purported withdrawal took place."). Even "[p]assive nonparticipation in the continuing scheme is not enough to sever the meeting of minds that constitutes the conspiracy." *Id.* at 112-13, 133 S.Ct. 714. Here, there is no evidence that Petitioner actively attempted to withdraw from the conspiracy. That alone is enough to implicate him in the September 13, 2013 and October 2, 2013 drug deals. The evidence noted above, however, suggests that Petitioner was indeed still an active member of the conspiracy and taking affirmative steps in furtherance of its goals.

*Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595 (2000).  A petitioner is not required to prove that the appeal will succeed but must show "something more than the absence of frivolity or the existence of mere good faith." *Miller-El v. Cockrell*, 537 U.S. 322, 338, 123 S.Ct. 1029 (2003).

Based on the reasons above, I am also denying a certificate of appealability because Petitioner has not made a substantial showing that he has been denied a constitutional right.  No reasonable jurist could disagree about whether, under *Strickland*, "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. 2052.

**SO ORDERED**

                                                                          ***/s/ Timothy S. Hillman***
                                                                          **TIMOTHY S. HILLMAN**
                                                                          **DISTRICT JUDGE**